UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION NEAL,

       Plaintiff,                          CIVIL ACTION NO. 07-15137

       v.                               DISTRICT JUDGE NANCY G. EDMUNDS

LINDA R. BUTTS, SHEILA         MAGISTRATE JUDGE VIRGINIA M. MORGAN
M. BASTIN, FRANCINE TOLLIVER,
and CORRECTIONAL MEDICAL
SERVICES,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

     This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights under the United States Constitution. The matter comes before the court on Defendants Butts and Bastin's Motion for Summary Judgment (D/E # 33). Plaintiff filed both a motion (D/E # 41) and declaration (D/E #43) in opposition to defendants' motion. Defendants then filed a reply (D/E # 44) and plaintiff filed a surreply (D/E # 51). For the reasons discussed below, this Court recommends that defendants' motion be **GRANTED IN PART**. Butts and Bastin are both entitled to summary judgment on the claims against them in their official

capacities, but they should not be granted summary judgment on the claims against them in their individual capacities.[1]

## II. Background

### A. Complaint

On December 4, 2007, plaintiff filed the complaint against defendants in this matter (D/E # 1). In that complaint, plaintiff alleges that, on March 5, 2006, plaintiff experienced severe pain while in the prison yard around 1:00 p.m. or 1:30 p.m. (Complaint, ¶ 7) Plaintiff spoke with Butts, a registered nurse, and informed her of the pain in his swollen testicles. (Complaint, ¶ 8) Butts replied that it was getting close to the 2:00 p.m. shift change. (Complaint, ¶ 8) She also told plaintiff to go back to his housing unit and she would have the next shift immediately call plaintiff out to be seen. (Complaint, ¶ 8) Plaintiff returned to his housing unit as instructed, but no one called plaintiff out to be seen. (Complaint, ¶ 9)

After 3:30 p.m., a correctional officer called Health Services and spoke with Tolliver, a registered nurse. (Complaint, ¶ 10) Tolliver told the correctional officer that she was aware of the plaintiff's condition and that she would see him when she was able. (Complaint, ¶ 10) Around 7:30 p.m., Tolliver called plaintiff over the telephone. (Complaint, ¶ 11) Plaintiff told plaintiff he was experiencing testicle pain and that his testicles were swollen. (Complaint, ¶ 11) Tolliver told plaintiff that it was not an emergency and that plaintiff should put a hot towel on his testicles. (Complaint, ¶ 11)

---

[1]The claims against Tolliver and Correctional Medical Services are still pending, but Tolliver has not yet been served. After Tolliver's address was provided under seal as ordered (D/E # 37), this court issued an order directing that Tolliver be served (D/E # 48).

On March 6, 2006, plaintiff explained his situation to a correctional officer and that officer spoke with Bastin, a registered nurse, regarding plaintiff's pain. (Complaint, ¶ 12) Bastin told the correctional officer that she was busy and that she would try to see plaintiff later. (Complaint, ¶ 13) Bastin also told the correctional officer to tell plaintiff that plaintiff should take an aspirin and place a warm rag on his swollen testicles. (Complaint, ¶ 13)

On March 7, 2006, plaintiff spoke with a correctional officer around 10:00 a.m. regarding his pain and swollen testicles. (Complaint, ¶ 14) That officer spoke with Butts, but Butts said she "don't have time for that shit." (Complaint, ¶ 14)

Around 8:00 p.m. on March 7, 2006, plaintiff went to Health Services because he had some medication to pick up. (Complaint, ¶ 15) While he was there, Elizabeth Dorsey, a registered nurse, noticed that plaintiff was in pain and walking oddly. (Complaint, ¶ 15) Plaintiff informed Dorsey of his condition and she examined him, finding that plaintiff's testicles were swollen to the size of grapefruits. (Complaint, ¶¶ 15-16) Dorsey held plaintiff in Health Services until plaintiff was transferred to the emergency room. (Complaint, ¶ 16)

At the hospital, a testicular ultrasound revealed a calcific lesion and no blood flow to the left testicle. (Complaint, ¶ 17) Plaintiff was diagnosed with left testicular torsion and had emergency surgery to remove his left testicle. (Complaint, ¶ 17) A doctor at the hospital told plaintiff that plaintiff's testicle could have been untwisted, rather than removed, if plaintiff had been sent to the hospital on the day he started to experience pain. (Complaint, ¶ 18)

**B. Pending Motion for Summary Judgment**

On April 21, 2008, Butts and Bastin filed a motion for summary judgment (D/E # 33). In that motion, defendants argue that plaintiff failed to properly exhaust his administrative remedies. Defendants also argue that no genuine issue of material fact exists on plaintiff's deliberate indifference claim and they are entitled to judgment as a matter of law. Defendants further argue that they are entitled to Eleventh Amendment immunity and qualified immunity.

On April 28, 2008, plaintiff filed a motion in opposition to Butts and Bastin's motion for summary judgement (D/E # 41). On May 2, 2008, plaintiff also filed a declaration in opposition to Butts and Bastin's motion for summary judgment (D/E # 43). In those filings, plaintiff argues that his grievances against Butts and Bastin, while ultimately denied as duplicative of an earlier grievance, were pursued to the extent MDOC allowed him to pursue them. Plaintiff also argues that a genuine issue of material fact exists as to whether the delay in treatment constituted deliberate indifference. Plaintiff further argues that, given that a genuine issue of material fact exists, defendants are not entitled to summary judgment or any immunity.

On May 6, 2008, defendants filed a reply to plaintiff's response to defendants' motion for summary judgment (D/E # 44) in which they repeated and elaborated on their earlier arguments.

On May 12, 2008, plaintiff filed a surreply, (D/E # 51) in which he again argued that he had properly exhausted his administrative remedies and that genuine issues of material facts were in dispute with respect to his claims against Butts and Bastin.

## III. Standard of Review

Butts and Bastin move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed.R.Civ.P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV.  Discussion**

    **A.  Claims Against Defendants in Their Official Capacities**

As argued by Butts and Bastin, the Eleventh Amendment bars plaintiffs claims against them to the extent they are sued in their official capacities.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State."  Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief".  Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case.  See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress from Butts and Bastin, both of whom are MDOC officials (Butts' Affidavit, ¶1, attached as Exhibit A to Defendants' Motion for Summary Judgment; Bastin's Affidavit, ¶ 1, attached as Exhibit B to Defendants' Motion for Summary Judgment), for past violations of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against Butts and Bastin are construed to be brought against them in their official capacities, the claims are barred by the Eleventh Amendment.

**B.  Claims Against Defendants in Their Individual Capacities**

**1.  Exhaustion of Administration Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines

and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

Plaintiff filed three grievances relevant to this action. On March 12, 2006, plaintiff filed a grievance stating that Tolliver refused to examine him on March 5, 2006, following plaintiff's complaints of pain. (Grievance RRF 06030019612E2, attached as part of Exhibit D to Defendants' Motion for Summary Judgment) In the Step I response to that grievance, MDOC stated that the grievance was still being investigated. (Grievance Response, RRF 06030019612E2, attached as part of Exhibit D to Defendants' Motion for Summary Judgment) Plaintiff appealed the grievance to Step II, but MDOC failed to timely respond to his appeal. Plaintiff then appealed his grievance to Step III and, in his Step III appeal, plaintiff noted that he had informed the MDOC officials who interviewed him that Butts and Bastin had also denied him care. (Step III – Reason for Appeal, RRF 06030019612E2, attached as part of Exhibit D to Defendants' Motion for Summary Judgment) In the Step III response date May 22, 2006, MDOC replied that the matter was still under review. (Step III Grievance Response for RRF 060300196, attached as part of Exhibit D to Defendants' Motion for Summary Judgment)

On May 4, 2006, MDOC received a grievance from plaintiff stating that Bastin refused to provide him with care on March 6, 2006. (Grievance RRF 06050030628A, attached as part of Exhibit E to Defendants' Motion for Summary Judgment) In response, MDOC found that plaintiff's grievance was duplicative of RRF 060500196-12E2 and, consequently, it was rejected. (Grievance Response, RRF 06050030628A, attached as part of Exhibit E to Defendants' Motion for Summary Judgment) Plaintiff appealed that rejection to Step II, but MDOC failed to timely respond. Plaintiff then appealed his grievance to Step III, where it was again denied as duplicative. (Step III Grievance Response for RRF 06-05-00306-28A, attached as part of Exhibit E to Defendants' Motion for Summary Judgment)

On June 1, 2006, MDOC received a grievance from plaintiff stating that Butts refused to provide him with medical care on March 5, 2006. (Grievance RRF 06060038012E1, attached as part of Exhibit F to Defendants' Motion for Summary Judgment) In the Step I response to that grievance, MDOC stated that it was still being investigated. (Grievance Response, RRF 06060038012E1, attached as part of Exhibit F to Defendants' Motion for Summary Judgment) Plaintiff appealed that rejection to Step II, but MDOC failed to timely respond. Plaintiff then appealed his grievance to Step III, where it was rejected as duplicative to RRF 06 03 196. (Step III Grievance Response for RRF 060600380, attached as part of Exhibit F to Defendants' Motion for Summary Judgment)

Butts and Bastin argue that plaintiff failed to properly exhaust his administrative remedies with respect to his claims against them because the only grievances they were named in were untimely and rejected as duplicative. Despite defendants' argument, plaintiff should be

deemed to have properly exhausted his administrative remedies. The initial grievance only named Tolliver in Step I, but it eventually incorporated both Butts and Bastin and it was properly exhausted. The subsequent grievances against Butts and Bastin were not rejected as untimely; instead MDOC found them to be "duplicative" of the plaintiff's initial grievance, which demonstrates that plaintiff's claims against Butts and Bastin were covered by his initial grievance. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 127 S.Ct. at 923. Under the prison's view, Butts and Bastin were part of the properly exhausted grievance and, therefore, plaintiff should be deemed to have properly exhausted his administrative grievances with respect to his claims against them.

**2. Qualified Immunity/Genuine Issue of Material Fact**

Butts and Bastin also argue that they are entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Plaintiff alleges that Butts and Bastin denied him medical care. Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004). However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273

F.3d at 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

**a. Butts**

According to Butts, she spoke with plaintiff in the prison yard on March 5, 2006, and plaintiff complained of pain in his side and groin. (Butts' Affidavit, ¶ 3, attached as Exhibit A to Defendants' Motion for Summary Judgment) Butts asked him why he came to the yard if he was in pain and plaintiff replied that he thought he could walk it off. (Butts' Affidavit, ¶ 3) Plaintiff also said that he thought the pain might be gas. (Butts' Affidavit, ¶ 3) Butts asked plaintiff if the pain was bad enough that she needed to call for an emergency cart and plaintiff told her that it was not that severe and that he may have just pulled a muscle in the weight pit. (Butts' Affidavit, ¶ 3) Butts then told plaintiff that the walkway was close to a shift change and she asked him if he could wait to be seen. (Butts' Affidavit, ¶ 4) Plaintiff replied that he could wait. (Butts' Affidavit, ¶ 4) Butts asked plaintiff if he was sure and he said he was. (Butts' Affidavit, ¶ 4) Butts placed an entry in the nurse's communications log after speaking with Neal. (Butts' Affidavit, ¶ 5)² She also spoke with Tolliver when the shift change occurred twenty minutes later and she informed Tolliver of plaintiff's request to be seen. (Butts' Affidavit, ¶ 5) Butts denies speaking with any officer regarding plaintiff on March 7, 2006, and she states that she was unaware that plaintiff was still experiencing pain on that date. (Butts' Affidavit, ¶ 6)

---

²The nurses' communications log is attached to Butts' affidavit as part of Exhibit A to Defendants' Motion for Summary Judgment.

-13-

According to Plaintiff's declaration, Butts never offered to send an emergency cart to get plaintiff. (Plaintiff's Declaration. ¶ 5) Plaintiff also denies telling Butts that he may have just had gas or pulled a muscle. (Plaintiff's Declaration. ¶ 5) Plaintiff further denies telling Butts he could wait until the next shift to be seen. (Plaintiff's Declaration. ¶ 6) Plaintiff's declaration also states that, after plaintiff returned from the hospital, Butts told plaintiff she would have stayed with plaintiff and treated him if she had known that Tolliver was not going to see plaintiff. (Plaintiff's Declaration. ¶ 8)

Butts only challenges whether a genuine issue of material fact exists with respect to the subjective prong of plaintiff's deliberate indifference claim. As discussed above, to satisfy the subjective component of a deliberate indifference claim, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). In this case, viewing the evidence in a light most favorable to plaintiff, Butts failed to examine or treat plaintiff after speaking to him in the prison yard and, while she logged plaintiff's complaint in the nurses' log after she eventually returned to health services, she failed to ensure that plaintiff was seen or that the note accurately reflected his urgent medical condition. Given that evidence, Butts clearly perceived the risk of harm to plaintiff, but she failed to promptly examine or treat him and a rational trier of fact could find that she disregarded the risk of harm to plaintiff. In the motion for summary judgment, Butts argues that she referred plaintiff to the next shift after being assured by him that there was no immediate need for attention, but her version of the events of this case are contradicted by plaintiff. Whether Butts' conduct constitutes deliberate indifference to a substantial risk of

serious harm to plaintiff is a genuine question of fact in this case and, consequently, she is not entitled to qualified immunity and summary judgment.

### b. Bastin

According to Bastin's affidavit, she does not recall receiving a call regarding plaintiff on March 6, 2006. (Bastin's Affidavit, ¶ 3, attached as Exhibit B to Defendants' Motion for Summary Judgment) She also claims that the telephone log kept in Health Services does not contain an entry for such a call and that she would have made an entry had she received such a call. (Bastin's Affidavit, ¶¶ 4-5)

According to plaintiff's declaration, he stood one foot away from his housing unit officer while the officer spoke with Bastin and explained to her that plaintiff's testicles were swollen and that he was in pain. (Plaintiff's Declaration, ¶ 11, D/E # 43) The officer then relayed a message that plaintiff was to place a warm rag on the swelling and take some aspirin, and that Bastin would see him later. (Plaintiff's Declaration, ¶ 11) Plaintiff also states that Bastin later told him that she had been the only nurse working and that she forgot to call him out. (Plaintiff's Declaration, ¶ 10)

Viewing the above evidence in a light most favorable to plaintiff, a genuine issue of material fact exists with respect to Bastin's alleged deliberate indifference and she is not entitled to summary judgment. While Bastin arguably provided some treatment to plaintiff by telling him to use a warm rag and take aspirin, that treatment was only meant to be temporary and Bastin completely failed to follow up on it. Moreover, Bastin's advice was made without actually examining or speaking to plaintiff. While Bastin's affidavit directly contradicts

plaintiff's declaration, a rational trier of fact could find for plaintiff and, therefore, there is a genuine issue for trial. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion to dismiss and/or for summary judgment be **GRANTED IN PART**. Butts and Bastin are both entitled to summary judgment on the claims against them in their official capacities, but they should not be granted summary judgment on the claims against them in their individual capacities.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: May 19, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 19, 2008.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan